UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x

CRYE PRECISION LLC and
LINEWEIGHT LLC,

          Plaintiffs,

  -against-

BENNETTSVILLE PRINTING,

          Defendant.

---------------------------------------------------x

**MEMORANDUM AND ORDER**

15-CV-00221 (FB) (RER)

*Appearances:*
For the Plaintiffs:
ROBERT ALLEN HOROWITZ
Greenberg Traurig, LLP
200 Park Avenue, 15th Floor
New York, NY 10166

For the Defendant:
CHRISTIAN DOMINIC CARBONE
JONATHAN FRANK HOLLIS
Loeb and Loeb LLP
345 Park Avenue
New York, NY 10154

**BLOCK, Senior District Judge:**

Plaintiffs Crye Precision LLC ("Crye Precision") and Lineweight LLP ("Lineweight") (collectively, "Crye") seek a declaration that a May 2014 Licensing Agreement ("2014 Agreement") is valid and enforceable against defendant Bennettsville Printing ("Bennettsville"). Crye also asserts state law claims for (1) breach of the 2014 Agreement; (2) breach of an April 2012 Licensing Agreement ("2012 Agreement"); (3) unjust enrichment; and (4) unfair competition.[1]

---

[1] Crye seeks leave to amend the Complaint to expressly request damages on its breach of contract claims. The Complaint is deemed so amended. *See* FED. R. CIV. P. 15(a)(2).

Bennettsville does not argue that Crye has failed to adequately allege facts in support of its claim seeking declaratory relief regarding the validity and enforceability of the 2014 Agreement. Rather, Bennettsville moves to dismiss the state law claims pursuant to Rule 12(b)(6) on the ground that those claims are precluded by 28 U.S.C. § 1498(a). For the reasons that follow, Bennettsville's motion is granted in part and denied in part.

## I.

The following facts are taken from the Complaint.

### A. MULTICAM

In 2003, Crye developed a camouflage pattern called MULTICAM ("MULTICAM") "for application onto fabric and other substrates." Compl. ¶ 2. MULTICAM is the subject of a United States design patent. *See* U.S. Patent No. D592,861 (filed Nov. 14, 2006). The "Multicam" trademark is also registered with the United States Patent and Trademark Office. For nearly a decade, MULTICAM "has been the camouflage of choice for United States Special Forces." Compl. ¶ 4. Moreover, in 2010, MULTICAM was selected as "the standard issue camouflage pattern for all U.S. Soldiers deployed to Afghanistan." *Id.* ¶ 16.

### B. 2012 Agreement

In 2010, at the request of the United States Department of Defense

("Department of Defense"), Crye entered into non-exclusive licensing agreements with "various printers, including Bennettsville, which permitted the printers to print and sell" MULTICAM products in connection with government sales. *Id.* ¶ 21. On April 10, 2012, upon expiration of their 2010 licensing agreement, Crye and Bennettsville entered into the 2012 Agreement. Under Section 3(h) of the 2012 Agreement, Bennettsville covenanted that it would not:

> [D]uring or after the term or expiration of this Agreement, make any products that are similar to MULTICAM through color palette, pattern or arrangement or placement of any elements incorporated in MULTICAM.

*Id.* ¶ 54. In Section 7(c) of the 2012 Agreement, Bennettsville also agreed "that it would not at any time during or after the Agreement perform an act or assistance to any act which may infringe or lead to the infringement of any of Crye's proprietary rights." *Id.* ¶ 55. Section 9(f) of the 2012 Agreement further provided that both Section 3 and Section 7 of the 2012 Agreement would "survive[] expiration of the Agreement and remain[] in effect." *Id.* ¶ 56.

### C. 2014 Agreement

Crye presented the 2014 Agreement to Bennettsville on April 16, 2014. Section 7 of the 2014 Agreement provided that:

> [Bennettsville] agrees that it shall not at any time during the term of this Agreement or at any time thereafter, make or provide, or assist or encourage others to make, products which are confusingly similar in

3

> design or appearance (i.e., color palette, arrangement or placement of elements) to, or which constitute derivative works of, any of the IP.

*Id.* ¶ 43. The following day, Ronald Levine ("Levine") – Bennettsville's Vice President – sent an email acknowledging his receipt of the 2014 Agreement and stating: "I'm signing the license now and sending it to [Crye's Director Gregg Thompson ("Thompson")] under separate cover." *Id.* ¶ 30. However, when Crye received the 2014 Agreement, it did not bear Levine's signature. Rather, it was signed by "Bennettsville Printing its Vice Presdent [sic]." *Id.* ¶ 31.

Section 2.1 of the 2014 Agreement provided that Bennettsville's right to produce MULTICAM products was contingent upon its satisfaction of certain "Production Quality Requirements." *Id.*, Ex. C at 2. To that purpose, the 2014 Agreement included a blank template of a Licensing Fee form that was to be completed by Crye after Crye received, and approved, samples of Bennettsville products incorporating the MULTICAM design. Sometime later, Bennettsville delivered a product sample to Crye. On June 16, 2014, Levine emailed Thompson asking whether he "approved our first article sample." *Id.* ¶ 33.

Section 2.1.2 of the 2014 Agreement provided that Crye's "written approval" for the product samples "shall be evidenced by [Bennettsville's] receipt of a completed Licensing Fee form" from Crye. *Id.*, Ex. C at 2. On October 24, 2014, Crye delivered a completed Licensing Fee form to Bennettsville. However, on

4

October 29, 2014, Bennettsville informed Crye that it "did not consider itself bound by any agreement with Crye Precision." *Id.*, Ex. D. In response, Crye asserted that it considered Bennettsville to be bound by the 2012 and 2014 Agreements.

**D.     Scorpion W2**

In or around 2014, the Department of Defense announced that it intended to switch the standard camouflage pattern from MULTICAM to Scorpion W2 ("Scorpion W2"), a camouflage pattern that is virtually indistinguishable from MULTICAM. All of Crye's licensees – except for Bennettsville – have acknowledged that Crye is entitled to licensing fees from the sale of Scorpion W2 products. However, Bennettsville argues that it has the right to print and sell Scorpion W2 products without paying licensing fees to Crye.

**II.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The Court "take[s] the factual allegations of the complaint to be true and draw[s] all reasonable inferences in the plaintiff's favor." *Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014).

Bennettsville argues that Crye's state law claims for: (1) breach of the 2014 Agreement; (2) breach of the 2012 Agreement; (3) unjust enrichment, and (4) unfair competition are precluded by § 1498(a).[2] For the following reasons, the Court finds that while Crye's unjust enrichment and unfair competition claims are barred by § 1498(a), § 1498(a) is inapplicable to their breach of contract claims.[3]

### A. 28 U.S.C. § 1498(a)

Section 1498(a) states, in relevant part, that:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

28 U.S.C. § 1498(a).[4] Section 1498(a) serves two important purposes. First, it

---

[2] Bennettsville frames its § 1498(a) analysis in preemption terms. However, § 1498(a) does not displace state law. Rather, it renders certain federal and state law claims nonlitigable. Accordingly, § 1498(a) is best viewed as a statute of preclusion, not preemption. *C.f. Kircher v. Putman Funds Trust*, 547 U.S. 633, 636 n.1 (2006) (interpreting a federal statute as a statute of preclusion, rather than preemption, because it "does not itself displace state law with federal law but makes some state-law claims nonactionable").

[3] Crye has a similar lawsuit pending against Duro Textiles, LLC ("Duro"), another government camouflage manufacturer and former MULTICAM licensee, in the Southern District of New York before the Honorable Denise Cote. On June 16, 2015, Judge Cote issued a thorough and well-reasoned opinion addressing many of the same issues presently before the Court. *See Crye Precision LLC v. Duro Textiles, LLC*, __ F. Supp. 3d __, 2015 WL 3751658 (S.D.N.Y. June 16, 2015). Because of the considerable similarities between the two actions, the Court makes reference to Judge Cote's opinion in this order where appropriate.

[4] "[B]ecause Section 1498 applies exclusively to patent law, it is the law of the Federal Circuit that applies to its interpretation." *Erie Engineered Prods., Inc. v. Wayne Integrated*

effectuates a "waiver of sovereign immunity and consent to liability by the United States" for claims arising out of a private party's unlicensed or unlawful use or manufacture of a patented invention on behalf of the government. *Madey v. Duke University*, 307 F.3d 1351, 1359 (Fed. Cir. 2002); *see also Crater Corp. v. Lucent Techs., Inc.*, 255 F.3d 1361, 1364 (Fed. Cir. 2001) (observing that § 1498(a) grants "the United States Court of Federal Claims exclusive jurisdiction over patent infringement suits against the government"). Second, it provides an affirmative defense for government contractors. *See Advanced Software Design Corp. v. Fed. Reserve Bank of St. Louis*, 583 F.3d 1371, 1375 (Fed. Cir. 2009) ("When raised between private parties, reliance on § 1498(a) is deemed an affirmative defense."); *see also Crater Corp.*, 255 F.3d at 1364 ("[Section] 1498(a) also provides an affirmative defense for applicable government contractors.").

B. **Contract Claims**

In determining whether Crye's breach of contract claims are precluded by § 1498(a), the Court begins – as it must – with the statute itself. *See United States v. Kinzler*, 55 F.3d 70, 71 (2d Cir. 1995) ("Statutory interpretation starts with the statute itself . . . ."). The clear language of § 1498(a) applies to claims premised on the unlicensed or unlawful use or manufacture of a patented invention on behalf of the

---

*Techs. Corp.*, No. 03-CV-3776, 2005 WL 6582921, at *1 (E.D.N.Y. July 29, 2005); *see also Madey*, 307 F.3d at 1359 ("Federal Circuit law provides the applicable interpretation of § 1498(a).").

7

United States. As such, a plain reading of § 1498(a) indicates that the statute only encompasses patent infringement claims. *See Duro Textiles*, 2015 WL 3751658, at *6 ("By its terms, the statute provides a process to remedy the unlicensed or otherwise unlawful use or manufacture of a patented invention. In other words, it provides a process for bringing a patent infringement claim.").

The conclusion that § 1498(a) only concerns patent infringement claims is supported by the statute's implementing Federal Acquisition Regulation, which expressly states, in relevant part, that:

> Pursuant to 28 U.S.C. [§] 1498, the exclusive remedy for *patent . . . infringement* by or on behalf of the Government is a suit for monetary damages against the Government in the Court of Federal Claims. There is no injunctive relief available, and there is no direct cause of action against a contractor that is *infringing a patent . . .* with the authorization or consent of the Government (e.g., while performing a contract).

48 C.F.R. § 27.201-1(a) (emphasis added). Caselaw construing § 1498(a)'s application has also consistently found that the government's waiver of sovereign immunity under the statute is limited to patent infringement claims. *See Richmond Screw Anchor v. United States*, 275 U.S. 331, 343 (1928) ("The purpose of the amendment was to relieve the contractor entirely from liability for the infringement of patents in manufacturing anything for the government."); *Zoltek Corp. v. United States*, 672 F.3d 1309, 1319 (Fed. Cir. 2012) (observing that § 1498(a) waives sovereign immunity when "the United States . . . would be liable for direct

infringement of the patent right for such use or manufacture if the United States was a private party"). As such, the Court finds that § 1498(a) does not, by its terms, encompass breach of contract claims.

Seemingly anticipating that the Court would reach this result, Bennettsville attempts to characterize Crye's breach of contract claims as camouflaged patent infringement claims. While the Court appreciates the irony in this argument, it is unavailing. Crye's breach of contract claims are not based on a violation of its intellectual property rights under the patent laws. Rather, the breach of contract claims are premised upon Bennettsville's purported breach of its alleged promise to not manufacture products that are either "similar" or "confusingly similar" to MULTICAM in Section 3(h) of the 2012 Agreement and Section 7 of the 2014 Agreement, respectively.

Although it is true that MULTICAM is the subject of patent protection, the contractual obligations that Bennettsville allegedly incurred – and freely negotiated – in the 2012 and 2014 Agreements do not depend upon Crye's patent rights or presuppose infringement of the MULTICAM patent. Indeed, Bennettsville could breach its agreement to not manufacture products that are either "similar" or "confusingly similar" to the MULTICAM design without ever actually infringing Crye's rights in that design. *See Duro Textiles*, 2015 WL 3751658, at *7 ("Separate

9

and apart from any duties that Duro may have under the patent laws . . . Duro voluntarily incurred an independent obligation to Crye by contracting not to 'make any products that are similar to MULTICAM through color palette, pattern or arrangement or placement of any elements incorporated in MULTICAM.'"). Consequently, § 1498(a) is inapplicable to Crye's breach of contract claims and Bennettsville's motion to dismiss them is denied.

The Court notes that in denying Duro's motion to dismiss Crye's breach of contract claim, Judge Cote held that the claim was "beyond the reach of Section 1498(a) . . . only to the extent that th[e] claim seeks damages, as opposed to an injunction . . . ." *Id.* at \*7. In reaching this conclusion, Judge Cote interpreted Crye's injunctive relief request as being made pursuant to Section 14(g) of Crye's 2012 Licensing Agreement with Duro, a provision which appears in identical form in the 2012 Agreement and which contemplates equitable relief in the event that Duro breaches its contractual obligations with respect to Crye's "proprietary rights." *Id.* From this, Judge Cote held that "[s]eeking an injunction under Section 14(g) . . . presupposes an infringement of Crye's patent rights, and transforms what could otherwise be a pure contract claim into one for patent infringement, which would bring [the breach of contract claim] within Section 1498(a)'s ambit." *Id.*

In this case, however, it is clear that Crye does not request injunctive relief

based on a violation of its "proprietary rights" under Section 14(g). Rather, Crye seeks equitable relief based on Bennettsville's alleged breach of its promise to not make products that are "similar" or "confusingly similar" under Section 3(h) of the 2012 Agreement and Section 7 of the 2014 Agreement, respectively. As the Court discussed above in explaining why § 1498(a) does not preclude Crye's breach of contract claims, Section 3(h) and Section 7 are both independent contractual covenants that do not presuppose infringement of the MULTICAM patent. Accordingly, Crye is not barred by § 1498(a) from seeking injunctive relief on its breach of contract claim and will be allowed to proceed – at least at this early stage of the litigation – on that theory of relief.

### C. Remaining Claims

While Crye's breach of contract claims are not precluded by § 1498(a), the statute does bar their unjust enrichment and unfair competition claims.

#### i. Unjust Enrichment

Unlike the breach of contract claims, Crye's unjust enrichment claim is not premised on Bennettsville's alleged breach of the 2012 and 2014 Agreements. *See Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) ("The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates *in the absence of any agreement*.") (emphasis

in original); *see also Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 464 (S.D.N.Y. 2014) ("It is axiomatic that a claim for unjust enrichment – a quasi-contract claim – applies only in the absence of a valid contract.").

Rather, Crye's unjust enrichment claim is based on its allegation that Bennettsville's production of Scorpion W2 violates its proprietary rights in MULTICAM. Because this claim both presupposes the activity of patent infringement – and necessarily arises outside of the parties alleged contractual relationship – it falls within the ambit of § 1498(a). *See Duro Textiles*, 2015 WL 3751658, at *8 ("[I]f an unjust enrichment claim like Crye's were permitted to survive a Section 1498(a) challenge, plaintiffs bringing patent infringement claims for unjust enrichment could simply style them as claims for unjust enrichment to avoid the statute."). Consequently, Crye's unjust enrichment claim is dismissed.

### ii. Unfair Competition

Finally, Crye's unfair competition claim is based on its allegation that Bennettsville "misappropriat[ed]" Crye's proprietary rights in the MULTICAM design "to print and sell Scorpion W2 . . . without Crye's express written authorization." Compl. ¶ 75. "Under New York law, an unfair competition claim involving misappropriation usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the property." *ITC Ltd. v.*

12

*Punchgini, Inc.*, 9 N.Y.3d 467, 478, 880 N.E.2d 852, 850 N.Y.S.2d 366 (2007). Accordingly, similar to the now dismissed unjust enrichment claim, Crye's unfair competition claim is – by definition – founded upon Bennettsville's purported infringement of Crye's patent rights in the MULTICAM design. Consequently, the unfair competition claim is also barred by § 1498(a).

## III.

For the foregoing reasons, Bennettsville's motion is granted as to the unjust enrichment and misappropriation claims, and denied as to the breach of contract claims.

**SO ORDERED.**

/S/ Frederick Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 27, 2015