# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

№ 15-CV-221 (FB) (RER)

---

CRYE PRECISION LLC AND LINEWEIGHT LLC,

                                                  Plaintiffs,

VERSUS

BENNETTSVILLE PRINTING,

                                                  Defendant.

---

**REPORT & RECOMMENDATION**

**August 13, 2019**

---

**TO THE HONORABLE FREDERIC BLOCK**
**SENIOR UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:**

    Bennettsville Printing ("Bennettsville") moves this Court to issue an Order awarding Bennettsville its attorneys' fees and costs incurred in defending this action, which was brought by Crye Precision LLC and Lineweight LLC (collectively, "Crye" or "Plaintiffs"). Bennettsville seeks an award pursuant to Fed. R. Civ. P. 54(d)(2), 15 U.S.C. § 1117(a) (the "Lanham Act"), and Bennettsville's contractual rights. (Dkt. No. 87). On March 4, 2019, Your Honor referred this matter to me for a report and recommendation. (Order Dated 3/4/2019). For the reasons stated herein, I respectfully recommend that the Court grant Bennettsville's motion for attorney's fees in the total amount of $367,880, pursuant to the Parties' contractual obligations.

# BACKGROUND[1]

### A. Factual Background

Crye developed a camouflage pattern ("MultiCam") for military and commercial clothing and equipment, which the Special Operations Unit of the United States Army (the "Army") adopted in 2010 as the standard issue pattern for all soldiers deployed in Afghanistan. (Dkt. No. 38, Amended Complaint ("AC") ¶ 17). Since its adoption, the Army has required Crye to execute non-exclusive licensing agreements with printers, such as Bennettsville, to print and sell MultiCam fabric in connection with Government contracts. (AC ¶¶ 25–26). In 2012, Crye entered into such an agreement with Bennettsville (the "2012 Agreement"). This Agreement contained a noncompete provision that prohibited Bennettsville in perpetuity from printing fabric with a camouflage pattern "similar to MultiCam through color palette, pattern or arrangement or placement of any elements incorporated in MultiCam." (AC ¶ 29). When the 2012 Agreement expired, the Parties entered into a subsequent agreement (the "2014 Agreement") with similar terms and conditions. (*Id.* ¶ 31; SJ Order at 19).

Around the same time that Bennettsville and Crye entered into the 2014 Agreement, the Army announced that it would no longer use MultiCam as its standard issue camouflage pattern, but rather would use a pattern called "Scorpion W2." (AC ¶¶ 33–34). With this new pattern in high demand, Bennettsville began accepting orders from Army contractors to print Scorpion W2. (*Id.* ¶ 41). Crye interpreted this new pattern to be "confusingly similar" to MultiCam and thus in violation of the Agreements. (AC ¶ 31).

### B. Procedural Background

On January 15, 2015, Crye commenced suit against Bennettsville for breach of contract, unjust enrichment, and unfair competition. (Dkt. No. 1). Bennettsville responded by filing a motion to dismiss pursuant to 28 U.S.C. § 1498(a), which Your Honor granted in part. (Dkt. No. 23 (dismissing state law unjust enrichment and unfair competition claims)). Crye subsequently amended its complaint and added claims for trade dress infringement and false designation of origin under 15 U.S.C. § 1125(a), and unfair competition claims in violation of 15 U.S.C. § 1125(a) and New York State common law. (AC ¶¶ 13–17).

In February 2015, Crye also filed suit against another MultiCam-licensed printer, Duro Textiles, LLC ("Duro"), raising claims for breach of contract, trade dress infringement, and common law unfair competition. *Crye Precision LLC v. Duro Textiles, LLC*, No. 15 Civ. 1681 (DLC), 2016 WL 1629343, at *3 (S.D.N.Y. Apr. 22, 2016). Duro had agreed to the same noncompete clause as Bennettsville and similarly began printing Scoprion W2 fabric following the Army's announcement in 2014. *Id.* at *1–2. In April 2016, the district court granted Duro's

---

[1] I presume the reader's familiarity with the facts and procedural history of this case. I will not reiterate them here, but for a brief summary of key facts to frame this motion. A detailed account may be found in the September 27, 2017, Order on Bennettsville's motion for summary judgment. (Dkt. No. 74 ("SJ Order") at 2–10).

motion for summary judgment, finding the noncompete clause unenforceable under New York law and the trade dress infringement and unfair competition claims meritless. *Id.* at *6–9.

On September 23, 2016, Bennettsville moved for summary judgment on all claims. Prior to this Court's decision on the matter, the Second Circuit affirmed the district court's ruling in *Duro*. *See Crye Precision LLC v. Duro Textiles, LLC*, 689 Fed. App'x 104, 106–108 (2d Cir. 2017). Applying the doctrine of collateral estoppel, Your Honor precluded Crye from advancing against Bennettsville claims of trade dress infringement, unfair competition, false designation, and breach of the 2012 Agreement. (SJ Order at 16). Unlike Bennettsville, Duro had not entered into a subsequent contract following the expiration of the 2012 Agreement. (*Id.* at 19). Therefore, the *Duro* litigation was confined to the reasonableness of the noncompete clause in the 2012 Agreement. However, Your Honor reached a similar conclusion that the noncompete clause of the 2014 Agreement was unreasonable and therefore unenforceable. (*Id.* at 13, 19). As a result, Your Honor also granted Bennettsville's motion for summary judgment as to Crye's 2014 Agreement claims. (*Id*. at 25). Bennettsville subsequently filed the present motion seeking to recover attorneys' fees and costs.

## DISCUSSION

Bennettsville seeks attorneys' fees and costs pursuant to the Lanham Trademark Act, 15 U.S.C. § 1117(a), or contractual obligations between the parties. (Dkt. No. 88 ("Supp. Mem.")). If the Court finds that Bennettsville is entitled to recover fees, Bennettsville's requested fees must be assessed for reasonableness. *See Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983).

### I.      Recovery of Attorneys' Fees Under the Lanham Act

In "exceptional cases," a prevailing party may recover attorneys' fees and costs pursuant to the Lanham Act. 15 U.S.C. § 1117(a). A prevailing party under the Lanham Act may be a plaintiff or defendant, as long as there is a "material alteration of the legal relationship of the parties that is judicially sanctioned." *N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester Cty. Taxi & Limousine Comm'n*, 272 F.3d 154, 158 (2d Cir. 2001) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001)) (quotation marks and internal citations omitted). Here, this Court's decision on summary judgment changed the legal relationship between Bennettsville and Crye to the extent that Bennettsville is no longer bound to Crye under the noncompete clauses, and Crye is collaterally estopped from pursuing its claims. *See Manhattan Review LLC v. Yun*, 919 F.3d 149, 153 (2d Cir. 2019) (finding that dismissal of claims based solely on collateral estoppel grounds constitutes a "material alteration" because defendants are "no longer suable" by plaintiff); *see also CRST Van Expedited, Inc. v. E.E.O.C.*, — U.S. —, 136 S. Ct. 1642, 1651 (2016) (holding that a "defendant may prevail even if the court's final judgment rejects the plaintiff's claim for a nonmerits reason."). Thus, Bennettsville is the prevailing party for purposes of determining attorneys' fees under the Lanham Act.

An exceptional case is defined under the Lanham Act as "one that stands out from others in the manner articulated by *Octane Fitness*." *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909

3

F.3d 519, 531 (2d Cir. 2018) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). The *Octane* test analyzes whether the case in question "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and facts of the case) or the unreasonable manner in which the case was litigated." 572 U.S. at 554. A court need not use any "'precise rule or formula for making these determinations,'" but rather it should utilize "'equitable discretion'" in considering the "'nonexclusive' list of 'factors'" enumerated in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 764 Fed. App'x 39, 41 (2d Cir. 2019) (quoting *Octane Fitness*, 572 U.S. at 554, 554 n.6) (quotation marks and internal citations omitted).

The *Fogerty* factors include "'frivolousness, motivation, objective reasonableness (both in factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* (quoting *Octane Fitness*, 572 U.S. at 554 n.6) (quotation marks and internal citations omitted). "Of these factors, 'objective reasonableness . . . should be given substantial weight in determining whether an award of attorneys' fees is warranted,'" *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 108 (2d Cir. 2014) (quoting *Matthew Bender & Co., Inc. v. West. Pub. Co.*, 240 F.3d 116, 122 (2d Cir. 2001)), but courts have "'broad discretion . . . to take into account a range of considerations beyond the reasonableness of litigating positions.'" *Louis Vuitton*, 764 Fed. App'x at 42 (quoting *Kirtsaeng v. John Wiley & Sons, Inc.*, — U.S. —, 136 S. Ct. 1979, 1988 (2016)).

In support of its application for an attorneys' fees award, Bennettsville puts forth various instances of Crye's alleged bad-faith conduct. (Supp. Mem. at 5–6). According to Bennettsville, Crye continued to pursue its claims in bad faith following the decisions in *Duro* (Supp. Mem. at 6), commenced the litigation on the false pretense that it owned the rights to the MultiCam patent, and intimidated Bennettsville's customers with "baseless threats of retaliatory litigation." (Supp. Mem. at 6; *see* Dkt. No. 89-8). Viewing the record as a whole, however, proves that these statements belie what actually took place throughout the more than four years of litigating this case. The record reveals that this case is not "exceptional."

First, Bennettsville maintains that Crye's continued advocacy in this Court following the decisions in *Duro* constituted bad faith litigation conduct. I disagree. Although this Court ultimately applied the doctrine of collateral estoppel to Crye's claims for trade dress infringement, unfair competition, and breach of the 2012 Agreement, I find it reasonable that Crye pursued the question of whether the doctrine applied, or in other words, whether Crye had been afforded a "full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455–56 (N.Y. 1985)). In fact, Crye had not been afforded this opportunity as to its 2014 Agreement claims because *Duro I* did not decide the validity of the 2014 non-compete clause. (SJ Order at 13). Furthermore, this Court found that Crye was "reasonably diligent" in bringing its motion for voluntary dismissal of its Lanham Act claims following the Second Circuit's decision in *Duro II* and did so without "undue vexatiousness." (SJ at 11).

4

Second, Bennettsville overstates the effect of a dispute between the Army and Crye. Bennettsville alleges that Crye pursued its claims "on the false pretense that [Crye] rightfully owns the intellectual property that it purported to license to Bennettsville." (Supp. Mem. at 6; *see* Dkt. No. 89-9 ("Army Letter")). Bennettsville's allegations are based on a letter that the Army sent to Crye on May 17, 2016, which requested title to MultiCam's design patent due to Crye's supposed failure to meet disclosure obligations under the Federal Acquisition Regulation Patent Rights Clause. (Army Letter at 4). Crye did not disclose the existence of this letter. (Supp. Mem. at 4).

As an initial matter, Bennettsville's claims that Crye does not own the MultiCam patent are unproven—the Army has not pursued its claims against Crye.[2] (Dkt. No. 91 ("Opp.") at 12). Although Crye should have disclosed the letter even despite the stay of discovery, absent any effect on Bennettsville's discovery a technical violation is not enough to find a case exceptional. *Cf. Romeo v. Juliette Laser Hair Removal, Inc. v. Assara LLC*, No. 08 Civ. 442 (DLC), 2016 WL 1328936, at *3 (S.D.N.Y. Apr. 5, 2016) (defendant's failure to disclose evidence qualified as exceptional conduct where plaintiff had to engage in "burdensome and time-consuming" third party discovery to acquire information necessary to prevail on motion). Bennettsville does not assert that Crye's nondisclosure of the Army's letter affected its discovery in any way.

Third, Bennettsville attempts to put forth evidence of Crye's bad faith by submitting cease-and-desist letters that Crye sent to Bennettsville's customers. (Dkt. No. 89-8). Bennettsville claims that such letters flout Section 1498's bar on recovering against government contractors for infringing acts. (Dkt. No. 89 ("Carbone Decl.") ¶ 19); 28 U.S.C. § 1498. However, "Crye's transmission of the letters to [ ] customers does not constitute an act taken in bad faith in light of the Federal Circuit's holding in *Virginia Panel Corp. v. MAC Panel Co. See Crye Precision LLC v. Duro Textiles, LLC*, 112 F.Supp.3d 69, 82 (S.D.N.Y. 2015) (citing *Virginia Panel Corp.*, 133 F.3d 860, 869–70 (Fed. Cir. 1997)). *Virginia Panel* "explicitly blessed" the sending of infringement notices even where Section 1498 is a complete defense. *Id*. Unsavory business behavior does not necessitate a finding of exceptionality. *See MZ Wallace Inc. v. Fuller*, No. 18 Civ. 2265 (DLC), 2018 WL 6715489, at *15 (S.D.N.Y. Dec. 18, 2018) (finding case was not exceptional despite plaintiff sending cease and desist letters based on weak trademark claims and posting on social media that defendant's product was a "knockoff").

Fourth, Bennettsville avers that Crye used a "scorched earth" approach to litigation to further its goal of driving government subcontractors out of business by advancing "meritless claims." (Dkt. No. 94 ("Reply") at 5; Carbone Decl. ¶ 17). A thorough inspection of the record, however, does not reveal any conduct that goes beyond zealous advocacy in this action. Crye pursued its claims until this Court reached a decision on the merits. The decision in *Duro* had no effect until Your Honor determined that the doctrine of collateral estoppel applied to all claims in this action except those related to the 2014 Agreement. Notably, Crye originally brought this suit in search of a declaratory judgment regarding the validity of the 2014 Agreement, and although the Court did not find it necessary to award declaratory relief, it did find that Bennettsville is bound by the valid

---

[2] Bennettsville has not contested Crye's position that the Army stopped pursuing this claim.

5

terms of the 2014 Agreement. (SJ Order at 19; Opp. at 10). Though Crye also sought a finding that the licensing fees provision of this Agreement was valid, unsuccessful claims do not "lead inevitably to the conclusion that [plaintiff's] motivation for engaging in [the] litigation was malevolent." *MZ Wallace Inc.*, 2018 WL 6715489, at *15.

Even if Bennettsville's accusations were convincing, Crye's alleged conduct does not "stand out" from other cases. *Octane*, 572 U.S. at 554 (requiring exceptional cases to "stand out" from others). Courts in this District have found cases to be exceptional under *Octane* where there was a corroborated admission by a lawyer that he brought the suit in bad faith, coupled with the losing party's continued blatant Lanham Act violations throughout discovery, *Benihana of Tokyo, LLC v. Benihana, Inc.*, No. 14 Civ. 224 (PAE), 2018 WL 3574864, at *11–12 (S.D.N.Y. July 25, 2018), *affirmed by* 2019 WL 2560633 (2d Cir. Jun. 21, 2019); the parties had spent a decade litigating unreasonable positions, and the litigation was rife with inconsistencies and willful concealment of information, violations of court orders, and frivolous motions, *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 644 (S.D.N.Y. 2018); and claims were brought by plaintiffs lacking capacity to sue, who then failed to disclose a relevant prior action and advanced unreasonable positions. *Manhattan Review LLC v. Yun*, No. 16 Civ. 102 (LAK) (RWL) (Dkt. No. 146, Report and Recommendation ("*R & R*")) (S.D.N.Y. Sept. 21, 2017), *R & R adopted* (Dkt. No. 151) (Nov. 20, 2017), *affirmed by* 765 Fed. App'x 574, 577–78 (2d Cir. 2019). Crye's alleged conduct pales in comparison to the egregious, frivolous, and malicious conduct of the losing parties in the aforementioned cases. *See Omega SA v. 375 Canal LLC*, No. 12 Civ. 6979 (PAC), 2019 WL 2442434, at *4 (S.D.N.Y. June 12, 2019) (declining to award fees where litigation conduct did not "stand out from others" with respect to "frivolousness or objective reasonableness"); *Desly Int'l Corp. v. Otkrytoe Aktsionernoe Obshchestvo "Spartak"*, No. 13-CV-2303 (ENV) (LB), 2018 WL 7054830, at *4–5 (E.D.N.Y. Dec. 7, 2018) (declining to award fees where broader context of parties' business relationship outweighed plaintiff's fraudulent registration application).

For the reasons above, Crye's conduct fails to meet the *Octane* exceptionality standard, and thus I recommend that Bennettsville's application for attorneys' fees under the Lanham Act be denied.

## II. Recovery of Attorneys' Fees Pursuant to Contractual Obligations

Bennettsville alternatively seeks attorneys' fees pursuant to Section 14(c) of the Parties' 2012 Agreement, which does not require that the case be exceptional. (Dkt. No. 87). Section 14(c) states:

> Attorneys' Fees. In the event any litigation is brought by either party in connection with this Agreement, the prevailing party in such litigation shall be entitled to recover from the other party all costs, reasonable attorneys' fees and other expenses incurred by such prevailing party in the litigation.

(2012 Agreement).

6

Crye argues that this Section is inapplicable because the 2012 Agreement was superseded by the 2014 Agreement that the parties entered into when the 2012 Agreement expired. (Opp. at 7; SJ Order at 19), The subsequent Agreement included different, and arguably narrower, language governing an award of attorneys' fees, Section 13:

> "Remedies . . . If any litigation is necessary to enforce the terms of this Agreement, the losing party shall reimburse the prevailing party for its reasonable attorneys' fees and costs."

(2014 Agreement).

The parties dispute which attorneys' fees provision controls. Bennettsville's position is that Section 14(c) of the 2012 Agreement is in fact the operative language for attorneys' fees, irrespective of Section 13 of the 2014 Agreement, because the 2012 Agreement included the following survival language:

> Survival. Licensee's obligations under . . . Section 14 shall survive termination or expiration of this Agreement.

(2012 Agreement).

In contrast, Crye opposes the operation of the survival language because of the merger clause in the 2014 Agreement:

> Entire Agreement. This Agreement, together with any schedules referred to herein, constitute the entire agreement between the parties with respect to the subject matter, and supersedes all prior agreements, proposals, representations or communications relating to the subject matter.

(2014 Agreement, Section 14.7).

The parties' disagreement comes down to the interaction of seemingly conflicting clauses (the survival clause and the merger clause) in the two Agreements.

   A.  *Survival Language versus Merger Clause*

The survival language in the 2012 Agreement states explicitly that the attorneys' fees provision will survive the expiration or termination of the 2012 Agreement. (2012 Agreement, Section 14(c)). The 2014 Agreement, however, includes a merger clause, Section 14.7, which states that the 2014 Agreement is the final word on the subject matter contained therein and supersedes any prior agreements. (2014 Agreement).

The Second Circuit interprets general merger clauses, such as the one included in the 2014 Agreement, to supersede previous agreements between the parties "only to the extent that [the agreements] conflict." *Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 283 (2d Cir.

7

2005), *abrogated on other grounds by Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391 (2d Cir. 2015). To determine the effect of a merger clause, New York Courts decide "as a matter of law" whether the parties intended the specific provisions at issue to cover the same subject matter; if the parties did not so intend, the agreements do not conflict. *Pereira v. Cogan*, 267 B.R. 500, 515 (S.D.N.Y. 2001) (citations omitted). Put differently, although parties may enter into subsequent agreements covering the same general subject matter, the terms of the two contracts may not be entirely coextensive. Where there is variance in the terms of the two agreements, the earlier terms survive to the extent that they remain uncontradicted by the terms of the subsequent agreement. *See Abuelhija v. Chappelle*, No. 08 Civ. 3679 (HB), 2009 WL 1883787, at *6 (S.D.N.Y. June 29, 2009) ("An intent to extinguish earlier contractual obligations cannot be inferred from a standard merger clause simply because the parties to the later agreement also entered an earlier contract on a related topic.").

There is ample support in the language of the Parties' Agreements for the Court to conclude that the merger clause has no effect on the continued viability of the 2012 Agreement's attorneys' fees provision. First, each attorneys' fees provision makes clear that the prevailing party will receive an award for fees related to "*this* Agreement." (2012 Agreement, Section 14(c); 2014 Agreement, Section 13) (emphasis supplied). The 2014 Agreement does not purport to cover fees incurred in disputes brought pursuant to the 2012 Agreement. Thus, the 2012 Agreement's attorneys' fee provision survives the merger clause.

Second, nowhere in the 2014 Agreement do the parties include language to negate the applicability of the survival language to the 2012 attorneys' fees clause. Adhering to this Circuit's approach, I find it improvident to treat the merger clause as a blanket extinguishment of prior contractual provisions absent definitive language to the contrary. *See Dresser-Rand Co. v. Ingersoll Rand Co.*, No. 18 Civ. 3225 (AJN), 2019 WL 1434575, at *4 (S.D.N.Y. June 29, 2019) (quoting *A & E Television Networks, LLC v. Pivot Point Entm't, LLC*, No. 10 Civ. 09422 (AJN), 2013 WL 1245453, at *11 (S.D.N.Y. Mar. 27, 2013); collecting cases) ("Even the provision that a contract 'shall replace all prior agreements' is not 'sufficiently definitive to supersede a particular earlier contract.'").

Moreover, the 2012 Agreement includes a release of claims provision, but the 2014 Agreement does not. Section 14(i) of the 2012 Agreement states:

> "[a]ny and all claims against CRYE arising under prior agreements, whether oral or in writing, between CRYE and LICENSEE are waived and released by LICENSEE by acceptance of this Agreement."

If the Parties intended for the 2014 Agreement to entirely supplant the 2012 Agreement and any claims under it, they likely would have kept the release of claims clause. However, the Parties did not include this clause, and the Court must ascertain their intent based on the language chosen by the Parties. *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir. 1993) (citing *Slatt v. Slatt*, 64 N.Y.2d 966, 967 (N.Y. 1985)).

Thus, Bennettsville is entitled to recover reasonable attorneys' fees and costs pursuant to the 2012 Agreement. Bennettsville timely moves for an Order awarding it attorneys' fees and costs pursuant to this Agreement. *See* Fed. R. Civ. P. 54(d)(2)(B). Bennettsville maintains that it is not seeking attorneys' fees under the 2014 Agreement because all fees are recoverable under the 2012 provision:

> Bennettsville is entitled to recover "all the costs, reasonable attorneys' fees and other expenses incurred by such prevailing party [Bennettsville] in the litigation" under Section 14(c) of the 2012 License. What fees Bennettsville would be entitled to receive under the narrower provision in the 2014 License is beside the point.

(Dkt No. 94 at 6). Accordingly, I will assess Bennettsville's right to reasonable fees under the 2012 provision only, and Crye's claim of untimeliness concerning recovery under the 2014 Agreement is immaterial. (*See* Opp. at 8).

### III. Presumptively Reasonable Attorneys' Fees

In evaluating a motion for attorneys' fees, courts in this District utilize "the lodestar method," which "create[s] a 'presumptively reasonable fee'" based upon "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166–67 (2d Cir. 2011) (*quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008)). The party moving for an attorneys' fees award bears the burden of demonstrating the "reasonableness and necessity of hours spent and rates charged." *Finkel v. Omega Comm'n Servs., Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citing *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983)). Contemporaneous time records that include "the date, the hours expended, and the nature of the work done" for each attorney must accompany the party's request. *Carey*, 711 F.2d at 1148.

The Supreme Court has repeatedly stressed that trial courts "'need not, and indeed should not, become green-eyeshade accountants' (or whatever the contemporary equivalent is)" when determining an attorneys' fees award. *Goodyear Tire & Rubber Co. v. Haeger*, — U.S. —, 137 S. Ct. 1178, 1187 (2017) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). "If a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours." *Spalluto v. Trump Int'l Hotel & Tower*, No. 04 Civ. 7497 (RJS) (HBP), 2008 WL 4525372, at *6 (S.D.N.Y. Oct. 2, 2008).

Here, Bennettsville seeks an award of $707,159 in attorneys' fees and $10,031.46 in costs for defending all claims brought by Crye. (Dkt. No. 93, Supplemental Declaration of Hollis (Dkt. No. 93-1). In support of its motion, Bennettsville submits a memorandum of law (Supp. Mem.); declarations of two attorneys involved in the case, Christian Carbone ("Carbone") and Jon Hollis ("Hollis") (Dkt. Nos. 89–90); 243 pages of redacted billing records (Dkt. Nos. 89-12–89-18, 90-3); attorney biographies (Dkt. Nos. 89-20–89-21, 90-4, 93-3);and summary charts. (Dkt. Nos. 89-

9

19, 90-2, 93-1). Crye fiercely opposes Bennettsville's attempt to establish reasonableness through these submissions (Opp. 13–25), which I address in context below.

A. <u>Reasonable Hourly Rate</u>

To determine a "presumptively reasonable rate," courts look to (1) rates awarded in prior cases; (2) their own knowledge of hourly rates charged in the district; and (3) evidence submitted by the parties. *See Farbotko v. Clinton Cty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005).

I. *Billing Rates for Counsel*

As an initial matter, Bennettsville fails to provide any credentials for four attorneys, two paralegals, and three other unidentified individuals who worked on this matter. In its Reply Memorandum, Bennettsville claims that it "cannot matter that Bennettsville has not submitted a complete attorney biography for a mid-level associate who billed 3.2 hours of time for legal research in 2015." (Dkt. No. 94 at 7). However, attorney credentials do in fact matter and must be provided in some form: "a party moving for attorneys' fees must provide the credentials—law school matriculation, practice area, and years of experience in the relevant practice area—to substantiate the requested hourly rate for each individual." *Desly Int'l Corp. v. Spartak*, No. 13-CV-2303 (ENV) (LB), 2018 WL 4522081, at *8 n.11 (E.D.N.Y. Aug. 1, 2018). Without this information, "the court may reduce the award of attorney's fees accordingly," *Fuchs v. Tara General Contracting, Inc.*, No. 06-CV-1282 (ETB), 2009 WL 3756655, at *2 (E.D.N.Y. Nov. 3, 2009) (citations omitted), since it cannot evaluate what a client in the community would be willing to pay for "reasonably comparable skill, experience and reputation." *Cruz v. Local Union No. 3 of IBEW*, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

Loeb & Loeb LLP ("Loeb"), Bennettsville's counsel, does not indicate the roles that "Laaraj," "Florin," and "Mehringer" have at the firm, despite these individuals' spending a collective 20.8 hours on this litigation and charging rates ranging from $325 to $695. Other individuals are at least named and titled in one of the supporting declarations. Since there is no basis for determining that any of these individuals are attorneys, Bennettsville will recover fees for these individuals at the rate determined for legal support professionals, discussed *infra*.

For four mid-level associates, for whom Bennettsville submits no more than the title of "mid-level litigation associate" (Carbone Decl. ¶ 38), Bennettsville proposes rates ranging between $355 and $590 per hour. Without evidence to show that any of these attorneys are entitled to higher awards, I recommend that these individuals receive a reduced fee from that which is typically awarded in this District for mid-level associates. *See Nat'l Envtl. Safety Co., Inc. v. Katz*, No. 18-CV-02161 (JMA) (GRB), 2019 WL 1994049, at *2 (E.D.N.Y. May 6, 2019) (reducing requested hourly rates where plaintiff provided no indication of experience level, aside from titles). I recommend that Bennettsville recover $250 per hour for work completed by associates Schutte, Segall, Thomas, and Young.

10

For the individuals for whom Bennettsville does provide background information, the proposed rates are extraordinarily high compared to the general range of rates awarded in this District for attorneys with similar experience and knowledge. Mr. Hollis, an associate with over 10 years of experience, submits records with billing rates ranging between $525 and $580 per hour. Mr. Carbone, Deputy Chair of Loeb's Litigation Department, has over 20 years of experience and billed hourly rates ranging between $695 and $765. Sara Slavin ("Slavin"), an associate with five years of experience, billed at a rate of $675. Partner Barry Slotnick ("Slotnick") billed at a rate of $930 per hour. Considering these attorneys' experience and the rates normally approved by this District, I recommend reducing Mr. Slotnick's fee to $500 per hour, Mr. Carbone's fee to $400 per hour, Mr. Hollis's fee to $350 per hour, and Ms. Slavin's rate to $300 per hour. *See N.Y. Assoc. for Retarded Children v. Cuomo*, 72-CV-356 (RJD), 72-CV-357 (RJD), 2019 WL 3288898, at *3, 10 (E.D.N.Y. July 22, 2019) (reducing hourly rates as follows: $500 per hour for partner with just under 30 years of experience, $325 per hour for senior-level associate, $300 per hour for mid-level associate, and $250 per hour for junior-level associate; collecting cases); *Katz*, 2019 WL 1994049, at *2 (reducing hourly rates in contract dispute to $500–$600 per hour for partners and $300 per hour for associates); *McLaughlin v. IDT Energy*, No. 14-CV-4107 (ENV) (RML), 2018 WL 3642627, at *17 (E.D.N.Y. July 30, 2018) (finding that associates with three to five years of experience generally receive $300 in this District). The rates recommended for these attorneys account for their specialized expertise and professional qualifications, as detailed in Loeb's submissions.[3]

## II.  *Billing Rates for Litigation Support Professionals*

Bennettsville may also recover fees billed by litigation support professionals, but the hourly rates awarded in this District in recent years fall well below Bennettsville's requested rates. While Bennettsville requests rates of $205 through $430 per hour for these professionals, courts in this District have awarded rates ranging between $75 and $100 per hour. *Cuomo*, 2019 WL 3288898, at *3 (collecting cases); *McLaughlin*, 2018 WL 3642627, at *17 (finding that generally paralegals are awarded no more than $75 per hour in this District); *RJ Kitchen Assoc. v. Skalski*, 16-CV-1436 (LDH) (AKT), 2019 WL 2436092, at *10 (E.D.N.Y. Feb. 25, 2019) (adjusting rate for paralegal downward to $100 based on existing case law in this District), *R & R adopted* (Order Dated 3/15/2019). Accordingly, I recommend reducing the fee for a junior paralegal with no supplied background information to $75 per hour and the fees for the other four professionals with significant experience to $100 per hour. The three individuals discussed *supra* (Florin, Laaraj, and

---

[3] Mr. Slotnick's firm biography, submitted as Exhibit 3 to Hollis's Declaration, does not indicate his years of practice. (Dkt. No. 93-3). However, based on the extensiveness of Mr. Slotnick's appellate litigation experience and success, I find that a rate of $500 is justified.

Submissions from Bennettsville regarding Mr. Carbone do not indicate whether he is considered a partner or associate. Rather, he is "deputy chair" of the litigation department. Based on his more than twenty years of practice and his senior title at Loeb, I find that a rate of $400 per hour is justified.

11

Mehringer), for whom Bennettsville does not provide titles or any other information, will also receive $75 per hour.

B. <u>Reasonable Hours Expended</u>

Crye vehemently objects to the number of hours Bennettsville claims it reasonably spent on this matter because (1) Bennettsville seeks to recover fees for hours for which it is not entitled to reimbursement; (2) Loeb's redacted submissions prevent the Court from assessing the legitimacy of the hours spent; and (3) Bennettsville's counsel duplicated efforts and billed far more hours than necessary for this case. (Opp. at 13–25). I agree with Crye that Bennettsville's submissions are problematic, and therefore Bennettsville's requested hours are unreasonable.[4]

Bennettsville inappropriately includes fees associated with this motion. (Dkt. No. 90 ("Hollis Decl."), Exh. 3 at 4–7 (listing over 60 hours spent on work related to recovering attorneys' fees)). "Fees on fees" must be denied when a contract provision lacks "specific language to indicate that time spent in justifying a fee application was to be included." *F.H. Kear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1267 (2d Cir. 1987); *Thor 725 8th Ave. LLC v. Goonetilleke*, 675 Fed. App'x 31, 34 (2d Cir. 2017) (affirming the continued applicability of *F.H. Kear & Co.* to fee-shifting authorized by contract). There is no such language in the 2012 Agreement.

Crye calculates that at least $32,722 accounted for on Bennettsville's December 8, 2017, invoice is attributable to time spent preparing Bennettsville's fee application. (Opp. at 16). Bennettsville argues that its voluntary reduction of 18.2% in fees accounts for unrelated fees, such as these. (Reply at 6). However, this is not true. A closer examination of Bennettsville's "summary of deductions" document (Pl. Mem. Exh. 15) demonstrates that personnel listed explicitly as working on the attorneys' fees motion in the December 8, 2017, invoice are not included in the deductions chart. (*Compare* Pl. Mem., Exh. 19 *with* Hollis Decl., Exh. 3 at 4–7). Further, this reduction was only applied to invoices up until September 9, 2017 (Pl. Mem. Exh. 15), and not the 328 hours Bennettsville requests thereafter.

Moreover, the redacted nature of the records creates a separate problem because the Court cannot verify that Bennettsville has in fact reduced fees for entries that it acknowledges "*do not form any part of Bennettsville's claim*." (Reply at 6 (emphasis in original)). An example of Loeb's problematic redacted entries can be found in Appendix B, *infra*.

These infirmities render it impossible to accept that the amount of time reflected in Bennettsville's invoices constitutes a "presumptively reasonable" amount. *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 183. Due to the multitude of illegitimate and

---

[4] Bennettsville does not provide the Court with a final number of hours its counsel spent on this litigation, although it does provide the total cost of attorneys' fees. (Reply, Exh. 1). Contemporaneous billing records submitted as exhibits detail the number of hours each attorney spent in the matter. I calculated a total of 1,515 hours from these invoices, which is the raw number of hours. This number does not account for the 18.2% reduction that Bennettsville applied to a select set of invoices because a more substantial reduction is applied to *all* invoiced hours, as discussed *infra*.

unverifiable redacted entries included in Bennettsville's time records, the amount of time partners spent "analyzing" Crye's position in *Duro*, and Bennettsville's heavy reliance on *Duro*'s arguments (which theoretically should have decreased the time Bennettsville spent on its motion for summary judgment),[5] I recommend reducing Bennettsville's total requested hours by twenty-five percent[6] for a total of 1,136.3 compensable hours. *See Aiello v. Town of Brookhaven*, No. 94-CV-2622 (FB) (WDW), 2005 WL 1397202, at *2 (E.D.N.Y. June 13, 2005) ("Because 'it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application,' courts apply across-the-board percentage cuts.") (quoting *Carey*, 711 F.2d at 1146). The fact that Bennettsville proposes an 18.2% reduction in fees to its first set of invoices due to the inclusion of redacted unrelated work[7] but does not propose reducing the hours of later invoices with similar deficiencies (*see, e.g.,* Hollis Decl., Exh. 3) supports the decision to reduce Bennettsville's total hours by twenty-five percent. Twenty-five percent accounts for the inclusion of unrelated work, duplicative billing, and vague entries present throughout Bennettsville's contemporaneous billing records.

I find that 1,136.3 hours reasonably accounts for the more than four years of litigation where Bennettsville was partially successful on its motion to dismiss, conducted extensive discovery, participated in a court-ordered settlement conference, drafted and edited its successful brief for summary judgment, prepared for oral argument on its motion, and defended against Crye's unsuccessful claims on appeal. (Supp. Mem. at 7–8; Dkt. No. 93-2). Applying the hourly rates determined above, I recommend that Bennettsville's request of $707,159 in attorneys' fees be reduced to an award of $367,880. *See* Appendix A.

### I.  Costs

The Attorneys' Fees provision of the 2012 Agreement provides that a prevailing party may recover costs incurred in the litigation. (2012 Agreement at 14(c)). "Costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1). "Initially, '[t]he burden is on the prevailing party to establish to the court's satisfaction that the taxation of costs is justified.'" *Equal Emp't Opportunity Comm'n v. United Health Programs of America, Inc.*, 350 F. Supp. 3d 199, 236 (E.D.N.Y. 2018) (quotation marks and citation omitted); *see also Ganci v. U.S. Limousine Serv. Ltd.*, No. 10-CV-3027 (JFB) (AKT), 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (finding party moving to recover costs "bears the burden of adequately documenting and itemizing the costs requested.") (quotation marks and citations omitted). "Failure to adequately document costs may result in the denial or reduction of those costs." *United Health Programs of America, Inc.*, 350 F. Supp. 3d at 236; *see Song v. 47 Old*

---

[5] A court may consider the novelty and complexity of a case in determining a number of reasonable hours spent by counsel. *Millea* 658 F.3d at 167 (2d Cir. 2011).

[6] This percentage is not applied on top of Bennettsville's voluntary 18.2% reduction in the first set of invoices, but rather a flat 25% reduction is applied to all invoices, including the first set.

[7] Bennettsville does not include any reduction for duplicative billing or vague entries, which I find present in the time entries and require a further reduction.

13

*Country, Inc.*, No. 09-CV-5566 (LDW) (SIL), 2015 WL 10641286, at *7 (E.D.N.Y. Oct. 1, 2015) (recommending denial of costs where plaintiffs submitted spreadsheet without invoices or receipts to substantiate costs), *R & R adopted*, 2016 WL 1425811 (Mar. 31, 2016). Only after a party meets this burden does it "enjoy[] a presumption that its costs will be awarded." *Id.* (quotation marks and citations omitted). Ultimately it is within the Court's discretion whether to award costs. *Id.* (citing *Dattner v. Conagra Foods, Inc.*, 458 F.3d 98, 100 (2d Cir. 2006)).

Bennettsville seeks to recover $10,031.46 in costs. (Dkt. No. 93-1). However, Bennettsville fails to itemize or even describe these costs in its motion papers, let alone substantiate these expenses with adequate documentation. A review of invoices in the record reveals that Bennettsville seeks costs for transportation of attorneys, attorney meals, electronic research fees, photocopying, telephone costs, attorney admission fees, and postage. (Dkt. Nos. 89-12–89-18, Hollis Decl., Exh. 3). None of these entries contains enough detail to verify the reasonableness of the costs, and Bennettsville has not met its burden through any other submissions. Thus, I respectfully recommend that Bennettsville's request for $10,031.46 in costs be denied.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Bennettsville be awarded $367,880 in attorney fees pursuant to the 2012 Agreement.

Plaintiffs' counsel is hereby directed to serve copies of this Report and Recommendation upon Defendant by regular and certified mail and to file proof of service on CM/ECF. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Frederic Block within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

SO ORDERED.

*Ramon E. Reyes, Jr.*

RAMON E. REYES, JR.

United States Magistrate Judge

Dated: August 13, 2019

Brooklyn, NY

**Appendix A.** Attorneys' Fees Chart

| Name | Rate | Total Hours Invoiced | Compensable Hours Expended (25% reduction) | Total |
|---|---|---|---|---|
| Carbone | $400 | 420.1 | 315.1 | $126,040 |
| Cummins | $100 | 39 | 29.3 | $2,930 |
| Florin | $75 | 0.4 | 0.3 | $22.50 |
| Gorruso | $100 | 13.2 | 9.9 | $990 |
| Hollis | $350 | 723.5 | 542.6 | $189,910 |
| Laaraj | $75 | 18.4 | 13.8 | $1,035 |
| McRae | $75 | 2.7 | 2.0 | $150 |
| Mehringer | $75 | 4.6 | 3.5 | $262.50 |
| Papa | $100 | 73.8 | 55.4 | $5,540 |
| Pepper | $100 | 33.4 | 25.1 | $2,510 |
| Schutte | $250 | 6.6 | 5.0 | $1,250 |
| Segall | $250 | 35.5 | 26.6 | $6,650 |
| Slavin | $300 | 64.4 | 48.3 | $14,490 |
| Slotnick | $500 | 6.4 | 4.8 | $2,400 |
| Thomas | $250 | 37.8 | 28.4 | $7,100 |
| Young | $250 | 35.2 | 26.4 | $6,600 |
| | | | TOTAL FEE AWARD | $367,880 |

**Appendix B.** Example of Bennettsville's Redacted Billing Record Submissions

(Dkt. No. 89-12 at 10).

| FILE NUMBER 00268 | 224593-10001 | BENNETTSVILLE HOLDING LLC D/B/A BE LITIGATION | 8/19/2015 INV: 1628506 PAGE 2 |
|---|---|---|---|

| Date | TMK | Description of Services Rendered | Hours |
|---|---|---|---|
| 7/1/15 | CDC | COMMUNICATIONS WITH CRYE COUNSEL REGARDING BRIEFING AND SETTLEMENT; Redacted **Redacted** | 2.3 |
| 7/1/15 | JFH | **Redacted** | |
| 7/1/15 | J S | ANALYZING RESEARCH AND DRAFTING SUMMARY RE Redacted; Redacted MEETING W C CARBONE RE SAME (.1) | 2.6 |
| 7/1/15 | TBC | E-MAILS TO J. HOLLIS RE: LETTER MOTION FOR LEAVE TO FILE EXCESS PAGES ON REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS (.2). | 0.2 |
| 7/2/15 | CDC | **Redacted** | |
| 7/2/15 | JFH | DRAFT AND REVISE REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS (4.9); CONDUCT LEGAL RESEARCH CONCERNING Redacted (1.7); CONDUCT LEGAL RESEARCH CONCERNING Redacted | 10.3 |

16